**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| TATIANA KOUZNETSOVA, | ) | |
| | ) | Case No.: 14-cv-04490 |
| Plaintiff, | ) | |
| | ) | Judge Charles P. Kocoras |
| vs. | ) | |
| | ) | Magistrate Judge Michael T. Mason |
| UNIVERSITY OF ILLINOIS AT | ) | |
| CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

NOW COMES the Defendant, UNIVERSITY OF ILLINOIS AT CHICAGO[1] ("University"), by and through its attorneys, Martin P. Greene and William C. Martin of GREENE AND LETTS, and pursuant to Federal Rule of Civil Procedure 56, submits the following Memorandum of Law in support of its Motion for Summary Judgment.

## STATEMENT OF FACTS

The facts upon which the University relies in this Memorandum of Law in support of its Motion are in Defendant's Local Rule 56.1(a)(3) ("LR 56.1") statement of uncontested facts.

## STANDARD OF REVIEW

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine dispute as to any material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.

---

[1] The correct legal name for Defendant is "The Board of Trustees of the University of Illinois".

*See Egonmwan v. Cook County Sheriff's Dep't*, 602 F.3d 845, 849 (7th Cir. 2010); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party. *CTL ex rel. Trebatoski v. Ashland Sch. Dist.*, 743 F.3d 524, 528 (7th Cir. 2014). Where the moving party demonstrates the absence of a disputed issue of material fact, the non-moving party bears the burden of presenting "evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012).

Along with its motion for summary judgment, the University has filed its statement of uncontested material facts pursuant to Local Rule 56.1, and filed its "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" as required by Local Rule 56.2. This Notice clearly explains the requirements of the Local Rules and warns Plaintiff that her failure to controvert the facts as set forth in the University's 56.1 statement of uncontested facts will result in those facts being deemed admitted. *See, e.g., Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

## ARGUMENT

An objective review of this case demonstrates that summary judgment in favor of the University should be granted. The Plaintiff has made a number of serious allegations concerning the University, but "[n]othing is simpler than to make an unsubstantiated allegation." *Parko v. Shell Oil*, 739 F.3d 1083, 1086 (7th Cir. 2014); *see also Diadenko v. Folino*, 741 F.3d 751, 758 (7th Cir. 2013) (stating "summary judgment is the put up or shut up moment in a lawsuit") (citations omitted); *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008). Throughout this litigation, Plaintiff has done just enough to maintain

this lawsuit, but next to nothing to substantiate anything stated in the Complaint. Furthermore, since filing this lawsuit, Plaintiff has systematically created and maintained personality conflicts with other employees in her work environment, and has continued to be insubordinate with her supervisor. (LR 56.1, at ¶ 53). Moreover, since this lawsuit began, Plaintiff has demonstrated an increasing inability to perform her job responsibilities at a competent level. (LR 56.1, at ¶ 65). The Plaintiff is a constant distraction in her work environment, and supervising the Plaintiff takes time away from other employees in need of assistance. *Id.* Indeed, there is ample evidence in this case to establish that Plaintiff's sole reason for initiating and maintaining this lawsuit is to harass the University. (*See generally* LR 56.1, at ¶ ¶ 51-65). Now faced with a motion for summary judgment, Plaintiff need not prove her entire case at this stage, but she must provide some evidence establishing that a genuine issue of material fact exists in this case. Plaintiff has failed in that task in this case and, as a result, the University is entitled to judgment as a matter of law.

## I. Summary Judgment Is Appropriate on All Claims Described in the Complaint That Are Outside of the Charges Presented before the IDHR.

On or about June 22, 2012, plaintiff filed her charge before the IDHR. (LR 56.1, at ¶ 5). The particulars of her charge are as follows:

- I. Unequal wages from January 2000 to June 19, 2012 because of national origin Russia.
- II. Unequal wages from January 2000 to June 19, 2012 because of sex, female.
- III. Unequal terms and conditions in regards to pension benefits from January 2000 to June 19, 2012 because of national origin, Russia.
- IV. Unequal terms and conditions in regard to pension benefits from January 2000 to June 19, 2012 because of sex, female.

3

(LR 56.1, at ¶ 6). On or about May 22, 2013, plaintiff filed her charge of discrimination before the EEOC claiming precisely the same issues as she did before the IDHR. (LR 56.1, at ¶ 8). Plaintiff's federal complaint consists of the standard form *pro se* complaint in which she alleges discrimination on the basis of national origin (Russia) and her gender as she claimed before the IDHR and the EEOC. (LR 56.1, at ¶ 11). Plaintiff goes further than these claims, however, and claims a failure to promote and wrongful termination on the standard pro se form. (LR 56.1, at ¶ 12). Plaintiff also attached a document to the form complaint that included the following additional assertions:

- a claim of fraud alleging the University tampered with her employment documents; and
- a claim of discrimination going back to when she first started working at the University in 1994 for the denial of medical insurance, being fired without her knowledge on two occasions, and being denied her full salary during her early years at the University.

(LR 56.1, at ¶ 13). Whether for failure to exhaust administrative remedies, failure to plead with particularity and present evidence or being outside the statute of limitations, these additional claims are not properly before this Court. As a result, summary judgment in favor of the University is appropriate on each of these claims.

### A. Summary Judgment Is Appropriate On Claims Of Discrimination Where Plaintiff Has Failed To Exhaust Her Administrative Remedies

Under Title VII, a plaintiff must first file an EEOC charge in order to give that body an opportunity to investigate and settle the dispute. *See Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535,550 (7th Cir. 2002) (holding that "[g]enerally a plaintiff may not bring claims under Title VII that were not originally brought among the charges to the EEOC."). A subsequently filed Title VII federal complaint must fairly encompass the claims asserted in the underlying EEOC charge. *Masionet v. Duraco*, 2010 U.S. Dist.

LEXIS 123977 at *7 (N.D. Ill. 2010); *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 863 (1985); *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 501 (7th Cir. 1994); *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir. 1976) (en banc). A plaintiff may proceed on claims not explicitly set out in an EEOC charge first, if those claims are "like or reasonably related" to the claims in his EEOC charge and could "be expected to grow out of an EEOC investigation of the charge." *Jenkins v. Blue Cross Mut. Hospital Ins., Inc.*, 538 F.2d 164, 167 (7th Cir. 1976); *Dibelka v. Repro Graphics, Inc.*, 2014 U.S. Dist. LEXIS 159229 at *4 (N.D. Ill. 2014); *Cheek*, 31 F.3d at 500-501 (holding that if there exists "a reasonable relationship" between a claim first asserted in a plaintiff's complaint rather than in the underlying IDHR charge, then the claim in a plaintiff's complaint can be said to have reasonably been expected to grow out of the underlying EEOC investigation).

In this case, Plaintiff's EEOC charge is completely silent as to any allegations that would reasonably direct an investigation into whether the University denied the plaintiff medical insurance, terminated her employment without her knowledge or denied plaintiff promotional opportunities. In her charge before the EEOC, Plaintiff described only claims of unequal pay and denial of pension benefits based on gender and/or national origin discrimination. (LR 56.1, at ¶ 8). As a result, these newly asserted claims should be barred for failure to exhaust administrative remedies, and summary judgment granted in favor of the University.

### B. Summary Judgment Is Appropriate On The Alleged Fraud Claim Because There is No Evidence Establishing Any Element Of Fraud

The elements of common law fraud in Illinois are: (1) a false statement of material fact; (2) by one who knows or believes it to be false; (3) made with intent to induce action

5

by another in reliance on the statement; (4) action by the other in reliance on the truthfulness of the statement; and (5) injury to the other resulting from that reliance. *JPMorgan Chase Bank, N.A. v. East-West Logistics, L.L.C.*, 9 N.E.3d 104, 120 (Ill. App. 2014). Moreover, the circumstances constituting fraud must be pled with particularity, Fed. R. Civ. P. 9(b), which "ordinarily requires describing the `who, what, when, where and how' of the fraud." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011). In this case, to avoid summary judgment, Plaintiff must present sufficient evidence from which a reasonable jury could find that the University committed a fraud against Plaintiff in any way including tampering with the plaintiff's employment records. *See generally Mullin v. Temco Mach., Inc.*, 732 F.3d 772, 777 (7th Cir. 2013).

Upon review of the record in this case, summary judgment for the University on plaintiff's common-law fraud claim is appropriate because plaintiff cannot establish any of the elements of common-law fraud.  Plaintiff has failed to establish not only the who, what, when, where and how of fraud, but also has failed to adduce evidence that:

- the University ever tampered with any of the plaintiff's documents;

- the University tampered with documents intentionally to induce anyone to rely on the tampering;

- Anyone relied upon the tampering; or

- Plaintiff was damaged as a result of the tampering.

In the end, Plaintiff has done nothing more than state unsubstantiated allegations of fraud. These unsubstantiated claims are insufficient to defeat summary judgment and the University is entitled to judgment as a matter of law on this claim.

### C. Summary Judgment Is Appropriate On Allegations Of Discrimination Outside the Statute of Limitations Set By Title VII

6

Title VII provides that a charge of employment discrimination must be filed within 300 days of the alleged unlawful employment practice. 42 U.S.C. § 2000e-5(e)(1); *see Mohasco Corp. v. Silver*, 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980); *Roney v. Ill. Dept. of Transp.*, 474 F.3d 455, 460 (7th Cir.2007). If a plaintiff does not file a charge concerning a discrete act within the 300-day window, her claim is time-barred and she may not recover. *See Roney*, 474 F.3d at 460.

In this case, on June 22, 2012, Plaintiff asserted before the IDHR claims of unequal wages and denial of pension benefits from January 2000 to June 19, 2012 on the basis of national origin and/or gender discrimination. (LR 56.1, at ¶ 6). Plaintiff now attempts to widen her window for recovery in the Complaint by asserting unequal wages and denial of benefits going all the way back to 1994. (LR 56.1, at ¶ 13). Applying the 300-day rule to the facts of this case, any claims of injury occurring before August 26, 2011 are time-barred. It follows, therefore, that summary judgment should be entered in favor of the University on any claims seeking recovery for any alleged injury that occurred prior to August 26, 2011.

## II. Summary Judgment Is Appropriate On Charges Presented Before The IDHR

A plaintiff may avoid summary judgment only by presenting sufficient evidence that could lead a rational jury to conclude that the University paid plaintiff unequal wages or denied her pension benefits because of her gender or national origin. *See Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012). In opposing a motion for summary judgment, discrimination claims can be established in one of two ways: the direct and indirect methods of proof. *See Tank v. T-Mobile USA, Inc.*, 758 F.3d 800, 805 (7th Cir.2014);

*Nancify v. Ill. Dept. of Human Servs.*, 697 F.3d 504, 509 (7th Cir.2012). Under the direct method, "the plaintiff must present either direct or circumstantial evidence of discrimination in her opposition to summary judgment." *Id.* at 841. Whether direct or circumstantial, the "evidence [must] permit the trier of fact to find that unlawful discrimination caused the adverse job action." *Id.* Direct evidence requires an admission of discriminatory intent, whereas circumstantial evidence typically includes: (1) suspicious timing, ambiguous oral or written statements, or behavior toward, or comments directed at, other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment; or (3) evidence that the employer offered a pretextual reason for an adverse employment action. *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 979 (7th Cir. 2014). Circumstantial evidence must point directly to a discriminatory reason for the employer's action. *Mullin v. Temco Mach., Inc.*, 732 F.3d 772, 777 (7th Cir. 2013) (internal quotation marks omitted).

Under the indirect method of proof established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), a plaintiff has the burden of establishing a prima facie case of gender or national origin discrimination by showing that: (1) she is a member of a protected class; (2) she met the reasonable expectations of her employer; (3) she suffered an adverse employment action; and (4) she was treated less favorably than similarly-situated employees not in her protected class. *Id.* at 801-02, 93 S.Ct. 1817; *see Norman-Nunnery v. Madison Area Tech. College*, 625 F.3d 422, 431 (7th Cir. 2010). If the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate nondiscriminatory reason for the employment action. *McDonnell*

8

*Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. If the employer offers such a reason, the burden reverts to the plaintiff who must show that the stated reason is a pretext, which raises a reasonable inference of unlawful discrimination. *Id.* at 804, 93 S.Ct. 1817. To avoid summary judgment, a plaintiff must present sufficient evidence from which a reasonable jury could find that the employer took an adverse action against her because she is a member of a protected class. *Id.*

In this case, Plaintiff has failed to establish her claims under either method. There is absolutely no direct evidence of discrimination, and no circumstantial evidence of discrimination to be found in the record. Looking at the indirect method, there is no evidence to establish that Plaintiff received unequal wages because of her gender or because of her national origin. Instead, the record establishes as to Plaintiff's prima facie case that: (1) the Plaintiff has not suffered an adverse employment action and (2) the Plaintiff has never been treated unfairly in comparison to similarly-situated employees not in her protected class. (LR 56.1, at ¶¶ 46-50). Furthermore, even if Plaintiff could make out a prima face case, which she absolutely cannot do, the record establishes that University's reasons for the differences in wages between plaintiff and similarly-situated employees not in her protected class are legitimate, non-discriminatory and not a pretext for discrimination. (LR 56.1, at ¶¶ 31-40).

The record in this case reveals that the University hired Plaintiff as a Research Specialist and she is currently and at all relevant times to this litigation under the supervision of Dr. Donald Lavelle. (LR 56.1, at ¶¶ 23, 24). Dr. Lavelle is a Research Associate Professor at the University and has been in this position for the past 10 years. (LR 56.1, at ¶ 25). Dr. Lavelle supervises four employees on research projects pertaining

to various aspects of hemoglobin synthesis searching for more effective treatments for hemoglobinopathies such as sickle cell disease. (LR 56.1, at ¶ 29).  Those employees and their duties are as follows:

a.      Kestis Vaitkus: Performs all handling and experimental procedures using baboons housed at the University Biologic Resources Facility.

b.      Armila Maria Ruiz: Performs bisulfite sequence analysis to determine levels of globin gene DNA methylation. Routinely performs RNA extractions, cDNA synthesis, and real time PCR analysis of gene expression. Also performs Western blot analysis.

c.      Vinzon Ibanez:  Trained to operate the Beckman Coulter flow cytometer. Uses the flow cytometer to perform analysis of F cells, F reticulocytes, and erythroid differentiation. Also performs RNA extractions, cDNA synthesis, and real time PCR assays to analyze gene expression.

d.      Tatiana Kouznetsova: Her duties have included performing RNA extractions and Western blot assays. (LR 56.1, at ¶ 29).

In addition, each of these employees is expected to participate in general lab duties. (LR 56.1, at ¶ 30).

During the investigation conducted by the IDHR, the Plaintiff identified only Kestas Vaitkus and Maria Ruiz as similarly-situated employees. (LR 56.1, at ¶ 32). None of Plaintiff's colleagues under Dr. Lavelle's supervision are from Russia. (LR 56.1, at ¶ 31). Vaitkus is the only male in the group. (LR 56.1, at ¶ 31). The IDHR found that the differences in pay between each researcher was directly related to the educational background and technical proficiency of each individual. (LR 56.1, at ¶ 48). In other words, Vaitkus and Ruiz worked alongside Plaintiff, but received a different salary for completing

10

different tasks and each task required a different skill set. It is undisputed that neither Ruiz nor Vaitkus had the same educational background as Plaintiff. (LR 56.1, at ¶ 35). It is also undisputed that Vaitkus worked directly with animals and he was a veterinarian doctor while the Plaintiff only worked with animal cells. (LR 56.1, at ¶ ¶ 39, 38). It is also undisputed that Ruiz used a more advanced technique of research than the Plaintiff. (LR 56.1, at ¶ 40). In sum, there is no evidence that the Plaintiff was treated less favorably in comparison to Vaitkus or Ruiz, nor is there evidence that the legitimate nondiscriminatory reasons for the differences in pay are a pretext for discrimination. In the end, Plaintiff was hired and remains employed by the University based on legitimate, non-discriminatory reasons. Therefore, in evaluating all of the evidence, no reasonable jury could conclude that the University discriminated against Plaintiff by providing her with unequal pay because of her national origin or gender. As a result, summary judgment should be granted in favor of the University on both Plaintiff's claims of unequal pay.

Finally, summary judgment also is appropriate in regard to Plaintiff's claim that she was subjected to unequal terms and conditions or denied pension benefits because of her national origin or gender. It is undisputed that University pension benefits are administered by the State Universities Retirement System ("SURS"), a separate legal entity from the University. (LR 56.1, at ¶ 41). The Governor and General Assembly founded SURS in 1941 as an administrator of benefits for employees of the University of Illinois. (LR 56.1, at ¶ 42). In the years the followed, SURS grew to include other universities, colleges and affiliated agencies throughout the state. (LR 56.1, at ¶ 43). Today, SURS is governed by an eleven-member Board of Trustees. *Id.* The SURS Board

11

of Trustees has a fiduciary duty to administer the System in compliance with the requirements of Articles 1 and 15 of the Illinois Pension Code. (LR 56.1, at ¶ 44).

It follows, therefore, that any changes to Plaintiff's existing benefit program must be enacted through the SURS Board of Trustees. There is no evidence in this case suggesting that the University exercises control or has any influence over SURS. Instead, the evidence in this case does establish that the Plaintiff never applied for retirement and, as a result, was never denied any benefits. (LR 56.1, at ¶ 45). As a result, considering all the facts in the case and resolving all reasonable inferences in favor of plaintiff, there is insufficient evidence such that a reasonable jury could find in favor of the Plaintiff that the University subjected Plaintiff to different pension benefits or denied her pension benefits on the basis of her national origin or gender.  As a result, summary judgment in favor of the University on this issue should be granted.

## CONCLUSION

For all the reasons stated herein, Defendant, THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS incorrectly named as UNIVERSITY OF ILLINOIS at CHICAGO, respectfully prays this Honorable Court grant its motion for summary judgment in its favor.

Respectfully Submitted,

UNIVERSITY OF ILLINOIS AT CHICAGO


*/s* Martin P. Greene_____
          Martin P. Greene


Martin P. Greene
William C. Martin
GREENE AND LETTS
Attorneys for the Defendant
55 West Monroe St., Suite 600
Chicago, Illinois 60603
(312) 346-1100
mpgreene@greeneandletts.com
wcmartin@greeneandletts.com